J-A19044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.T., MOTHER | : | |
| | : | No. 35 WDA 2025 |

Appeal from the Order Entered December 10, 2024
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-AP-0000100-2024

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: AUGUST 11, 2025**

K.T. ("Mother") appeals from the order entered on December 10, 2024, involuntarily terminating her parental rights as to D.B., born in September 2022.[1]  Mother's counsel, Aaron Sontz, Esquire, has filed an application to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm the order terminating Mother's parental rights and we grant counsel's application to withdraw.

The Allegheny County Office of Children, Youth and Families ("CYF") first became involved with D.B. in November 2022, when she was two months old, following concerns of Mother's drug usage and D.B. demonstrating withdrawal symptoms.  D.B. was removed from the home at that time yet ultimately

---

[1] At the time of the termination proceedings, D.B.'s father was deceased.

returned to Mother's care when she began residing with a relative. In November 2023, D.B. was treated at a hospital due to having burns on her chest and cocaine in her system. CYF obtained an emergency protective custody order and placed D.B. with a pre-adoptive foster family. The court adjudicated her dependent in December 2023.[2]

Since then, Mother had made next to no progress in her family service plan goals established by CYF and the court. Relating to drug and alcohol treatment, Mother was given multiple referrals for evaluations, none of which she completed. She attended several drug rehabilitation facilities but did not finish any programs. While Mother did undergo a mental health evaluation, the record is not clear what steps, if any, she took in furtherance of recommended treatment.

Additionally, Mother was largely nonresponsive to CYF after D.B.'s placement and made very little effort to visit D.B., despite CYF offering transportation assistance to Mother. She was initially permitted to have two visits with D.B. per week. Due to her lack of communication with CYF and the failure to coordinate visits, this was reduced to one day a week. On August 6, 2024, the orphans' court found aggravated circumstances arising from Mother's failure to engage with D.B., and thus relieved CYF of the obligation

_____

[2] The dependency proceedings are not included in the certified record, but there is an indication that Mother was provided counsel in that matter after D.B.'s placement. Counsel was then given leave to withdraw in late summer of 2024, after receiving no contact from Mother for more than six months. *See* Orphans' Court Opinion, 3/31/25, at unnumbered 4.

to aid with reunification. The record bears out that Mother only visited D.B. a total of two times while the child was in foster care, the last instance being on April 11, 2024. In the period spanning April to November 2024, Mother did not attempt to contact her caseworker at CYF at all. At no point did Mother inquire with CYF about D.B., send cards or gifts, or become involved in D.B.'s medical or physical care.

Based on the above, CYF filed the underlying petition seeking termination of Mother's parental rights ("TPR petition") on October 28, 2024. At first, CYF was unsuccessful in serving Mother with the TPR petition and corresponding notice of the termination hearing date due to her unknown whereabouts. CYF therefore published notice of the hearing in the Pittsburgh Post-Gazette, along with language informing Mother of her right to retain counsel or to contact a lawyer referral service if she could not afford an attorney. CYF later successfully served Mother by process server at a rehabilitation facility on November 19, 2024. As with the publication, the served documents provided guidance to Mother on obtaining counsel.

The termination hearing was held on December 10, 2024. Mother did not appear, nor did she take any steps to seek the appointment of an attorney who could have attended on her behalf. In Mother's absence, CYF proffered testimony as to the above facts. Additionally, a CYF case worker testified that D.B. had bonded with the foster family in the past thirteen months and relied upon the foster parents to meet her needs. Following the hearing, the

orphans' court entered an order terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).

Although the record is not clear as to the triggering cause, the court thereafter appointed Attorney Sontz as Mother's counsel. Mother filed a timely notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i), reserving the right to amend once transcripts became available. The orphans' court authored an opinion discussing the evidence supporting its decision to terminate Mother's parental rights.

Mother filed in this Court an application for remand, seeking leave to amend her Rule 1925(b) statement to add the issue of whether Mother's constitutional right to counsel was violated. We granted the application, directing Mother to file a new statement and ordering the court to enter a supplemental opinion as to any new issues raised. Both Mother and the orphans' court complied with our order.

As noted, Mother's counsel subsequently filed both an **Anders** brief and a petition to withdraw as counsel, which we must first consider before addressing the underlying merits. **See In re V.E.**, 611 A.2d 1267, 1275 (Pa.Super. 1992) (extending the **Anders** procedure to appeals from involuntary termination decrees); **In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa.Super. 2020) ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." (cleaned up)).

The following legal principles guide our review:

Direct appeal counsel seeking to withdraw under ***Anders*** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an ***Anders*** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.

***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

If counsel does not fulfill the aforesaid technical requirements of ***Anders***, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with ***Anders*** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy ***Anders***, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

***Commonwealth v. Cook***, 175 A.3d 345, 348 (Pa.Super. 2017) (cleaned up).

Our High Court further delineated counsel's duties as follows:

[I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Based upon our examination of the petition to withdraw and *Anders* brief, we conclude that counsel has complied with the technical requirements set forth above. As required by *Santiago*, counsel presented a history of the case, referred to issues that arguably support the appeal, stated his conclusion that the appeal is frivolous, and cited case law. *See Anders* brief at 7-30. Counsel also included a proof of service indicating that he sent the petition and brief, along with a letter apprising Mother of her right to obtain counsel or proceed *pro se*, to her last known residential address.[3] We must therefore "'make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Commonwealth v. Flowers*, 113 A.3d 1246, 1249 (Pa.Super. 2015) (quoting *Santiago*, 978 A.2d at 354 n.5).

The *Anders* brief identifies the following claims, which we have reordered for ease of disposition:

> I. Did [CYF] fail to prove by clear and convincing evidence that for a period of at least six months immediately preceding the filing of the TPR petition Mother relinquished her parental claim to D.B., or that she refused to perform her parental duties as required under 23 Pa.C.S. § 2511(a)(1) and that termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of D.B. under [§] 2511(b)?

---

[3] In his petition seeking leave to withdraw, counsel indicated that in the months following the termination hearing, he discovered that Mother began treatment at one rehabilitation facility and later stayed temporarily at a halfway house. However, Mother provided no forwarding address or other means of contact upon leaving each place and did not communicate with counsel. To date, Mother has not filed a response to counsel's petition.

- 6 -

II. Did [CYF] fail to prove by clear and convincing evidence that D.B. was without essential parental care, control or subsistence necessary for her physical or emotional well-being and the conditions of and causes of the incapacity, abuse, neglect, or refusal could not be remedied by Mother under 23 Pa.C.S. § 2511(a)(2) and that termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of D.B. under [§] 2511(b)?

III. Did [CYF] fail to prove by clear and convincing evidence that the conditions which led to the removal or placement of D.B. continue to exist, and that Mother cannot or will not remedy those conditions within a reasonable period of time, or that the services or assistance reasonably available to Mother were not likely to remedy the conditions which led to the removal or placement of D.B. within a reasonable period of time and that termination of parental rights would best serve D.B.'s needs and welfare under 23 Pa.C.S. § 2511(a)(5) and that termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of D.B. under [§] 2511(b)?

IV. Was Mother denied her constitutional right to counsel at the [termination] hearing where the record contains no evidence that Mother was informed that her counsel in the dependency proceedings was granted leave to withdraw, and that she was therefore unrepresented at the [termination] hearing, and where Mother did not knowingly, intelligently, and voluntarily waive her right to counsel in either the dependency case or the [termination] case?

***Anders*** brief at 5-6 (cleaned up).[4]

The first three potential claims identified in the ***Anders*** brief pertain to whether the evidence was sufficient to support the court's order terminating

---

[4] CYF, as appellee in this matter, filed an application to dismiss in this Court, contending that Mother had not preserved any issues on appeal by failing to lodge any contemporaneous objections at the termination hearing and because she otherwise raises issues for the first time on appeal. ***See generally*** CYF's application to dismiss, 1/13/25. Since, as discussed *infra*, we find that this appeal is frivolous for other reasons and affirm on that basis, we deny the application as moot.

Mother's parental rights, which we examine together. We begin with the legal principles governing our review of such orders:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358–59 (Pa. 2021) (cleaned up). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Further, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Section 2511 of the Adoption Act sets forth the following two-part analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re Adoption of B.G.S.*, 245 A.3d 700, 705 (Pa.Super. 2021) (cleaned up).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up).

To affirm a termination order, we need only agree with the trial court that any one subsection of § 2511(a), as well as § 2511(b), is met. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). As it pertains to the case *sub judice*, we consider § 2511(a)(1) and (b), which provide as follows in relevant part:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Our Supreme Court has offered authoritative guidance on the inquiry central to termination pursuant to § 2511(a)(1):

Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance[,] and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life. Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (cleaned up).

Although our General Assembly emphasized "the six months immediately preceding the filing of the termination petition" as the "most critical period for evaluation[,]" the High Court cautioned that courts should "avoid a mechanical application of the law regarding the termination of parental rights." *Id*. at 592-93. Rather, the review conducted by the orphans'

court should encompass the "whole history of a given case." ***In re Adoption of C.M.***, 255 A.3d at 364. Moreover, every assessment of § 2511(a)(1) "must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination of parental rights." ***In re Adoption of L.A.K.***, 265 A.3d at 593. These factors include, among other things: (1) the parent's explanation for his conduct; (2) post-abandonment contact and efforts to re-engage with the child; and (3) the effect on the child of terminating the parent's rights pursuant to § 2511(b). ***Id***.

In discussing the sufficiency of the evidence, counsel notes in the ***Anders*** brief that Mother had only seen D.B. twice from the time of D.B.'s removal in November 2023 to the hearing thirteen months later, despite agency efforts to assist with transportation, and that the final visit was more than six months before the filing of the TPR petition. ***See Anders*** brief at 23-24. He further highlights that she did not send money, gifts, or cards to D.B. ***Id***. at 24. Thus, counsel concludes that "there is no evidence in the record upon which Mother could reasonably argue that the trial court abused its discretion" in terminating her parental rights. ***Id***.

In its opinion, the orphans' court expounded on these points as follows:

Mother has not exerted herself to perform any of the requisite parental duties. Her failure to attend scheduled visits with [D.B.] is evidence of this. Mother was not available for testimony, so the court is not privy to any obstacles that would have hindered her

- 11 -

ability to attend visits. However, th[e] court heard testimony that CYF provided Mother with transportation assistance. This suggests two things: one, that a reliable way to get to and from the visiting locations was available to her, and two, she did not take advantage of that resource. Mother could have valid reasons for not using the resources provided to her, but th[e] court is not in the business of speculation. The court can only base its determinations on the evidence brought before it. Mother's inconsistency with visits demonstrates a lack of genuine effort to maintain communication with the subject child. This was further evidenced by Mother's failure to utilize other means of communication to keep in contact with the subject child, such as sending cards, gifts[,] or letters.

Orphans' Court Opinion, 2/11/25, at unnumbered 12 (some capitalization altered).

Upon review, we agree that CYF adduced sufficient evidence for the orphans' court to conclude that § 2511(a)(1) had been satisfied. Any contention to the contrary would necessarily fail as the uncontested evidence demonstrated that Mother had not performed any parental duties in the six-month period leading up to the filing of the TPR petition. She had no communication with D.B. or CYF during that time and she did not otherwise "exert [herself] to take and maintain a place of importance in" D.B.'s life. **See In re Adoption of L.A.K.**, 265 A.3d at 592. In sum, there was no record evidence that Mother fulfilled any parental duties during the period contemplated by § 2511(a)(1).

Having found statutory support for termination under subsection (a), we now pivot to § 2511(b), which is reviewed from the child's perspective. **See Matter of Adoption of L.C.J.W.**, 311 A.3d 41, 51 (Pa.Super. 2024). In conducting a § 2511(b) analysis, the court must place the child's

"developmental, physical, and emotional needs and welfare above concerns for the parent. Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis." *Id*. (cleaned up). Those emotional needs "include intangibles such as love, comfort, security, and stability." *Id*. at 52 (cleaned up). "[I]f the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task." *Id*. (cleaned up). Finally, this Court "must keep the ticking clock of childhood ever in mind" and we "will not disturb [the court's bonding] assessment when [its] factual findings are supported by the record." *Matter of Adoption of L.C.J.W.*, 311 A.3d at 52 (cleaned up).

In the *Anders* brief, counsel discusses the uncontradicted testimony from CYF that D.B. was doing well in her foster home and has bonded with the pre-adoptive family. *See Anders* brief at 27. Attorney Sontz also notes that because Mother did not appear at the termination hearing or present any evidence, there was nothing in the record demonstrating any existing bond between D.B. and Mother. *Id*. at 28.

In a similar vein, the orphans' court addressed this prong as follows:

Here, th[e] court heard testimony from both [CYF] caseworkers that the subject child was doing well in her foster home, and that she has developed a bond with the foster parents such that she goes to them when she needs help and seems happy to be around them. Th[e] court did not hear testimony regarding the subject child's bond with Mother. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." Thus, th[e] court will not assume a bond

- 13 -

where there is no evidence of one. It is very clear that [D.B.]'s day-to-day needs are being fulfilled by the foster parents, and that terminating Mother's rights will not have an adverse impact on her.

Orphans' Court Opinion, 2/11/25, at unnumbered 15-16 (cleaned up, quoting *Adoption of N.K.*, 307 A.3d 672, 2023 WL 6892002, *4 (Pa.Super. 2023) (non-precedential decision)).

Again, we find that CYF met its burden with respect to subsection (b), thus rendering any challenge to the sufficiency of the evidence wholly without merit. The orphans' court's findings of a bond between D.B. and the foster family are amply supported by the record. Conversely, there was no evidence of any existing bond between Mother and D.B., or that termination would detriment D.B.'s wellbeing. In other words, nothing supports the contention that by terminating her parental rights, the court was not giving "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b).

In the remaining issue identified in the *Anders* brief, counsel discusses whether Mother was deprived of her constitutional right to counsel. *See Anders* brief at 17-23. A parent's right to counsel in termination proceedings is governed as follows: "The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, **upon petition of the parent**, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship." 23 Pa.C.S. § 2313(a.1) (emphasis added).

This Court has noted thusly that "an indigent parent must petition the trial court for counsel in a termination proceeding. The appointment of counsel is not an automatic right." **In re A.R.**, 125 A.3d 420, 424 (Pa.Super. 2015) (cleaned up). Moreover, a "parent waives his or her right to counsel if he or she is provided with clear instructions on how to petition for counsel, but fails to take action." **In re Adoption of C.A.S.**, 166 A.3d 353, 356 (Pa.Super. 2017) (citation omitted).

As to this potential claim, counsel concludes that it is frivolous because Mother was apprised of her right to seek counsel and failed to do so. **See Anders** brief at 17-23. Specifically, Attorney Sontz notes that Mother was personally served with a notice concerning the termination hearing and that it included language informing her of the right to retain counsel and providing her with contact information for securing an attorney if she could not afford to do so. **Id**. at 18-19. Counsel further highlights that the same notice was published in the Pittsburgh Post-Gazette, providing Mother with constructive notice of her rights. **Id**. at 19. Despite this, Mother never requested the appointment of counsel with respect to the termination proceedings. **Id**. at 22. The brief additionally surmises that even if the orphans' court had erroneously deprived Mother of her right to counsel within the prior

dependency proceedings, that would not warrant relief for the separate termination proceedings initiated at a later point in time.[5] *Id*. at 22-23.

Based on our review of the record, we agree that this issue would garner Mother no relief. By failing to request that the orphans' court appoint counsel after CYF's initiation of the termination proceedings, Mother has no grounds to assert any constitutional or statutory violation. *See*, *e.g.*, *In re A.R.*, 125 A.3d at 424 (discerning no error in the trial court's decision not to appoint counsel when (1) the father never requested the same, and (2) he had received written notice instructing him to contact the local lawyer referral service if he did not have an attorney or could not afford one). Since Mother received both actual and constructive notice of the termination hearing and the right to seek counsel in the event she lacked the funds for private counsel, this claim wholly lacks merit.

Having addressed the issues raised in the *Anders* brief, we lastly determine that our "simple review of the record to ascertain if there appear[s] on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated[,]" has revealed no additional issues that counsel failed to address. *See Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa.Super. 2018) (*en banc*). Therefore, we affirm the order terminating Mother's parental rights and we grant counsel's petition to withdraw.

---

[5] For its part, the orphans' court analyzed this issue at length, opining that Mother was not wrongfully deprived of her right to counsel for many of the same reasons articulated by counsel. *See generally* Orphans' Court Opinion, 3/31/25.

Application of Aaron Sontz, Esquire, to withdraw as counsel is granted.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/11/2025